# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTRON TALLEY, | )<br>) |
| Plaintiff, | ) Civil Action No. 2: 14-cv-1411<br>) |
| v. | ) United States Magistrate Judge<br>) Cynthia Reed Eddy |
| MR. ORLANDO H. HARPER, et al, | )<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER[1]

Presently pending before the Court for disposition is the Motion to Dismiss (ECF No. 124) Plaintiff's Amended Complaint filed by Defendant officials and correction officers at the Allegheny County Jail ("ACJ"). Plaintiff has filed a Response in opposition (ECF No. 129). For the reasons that follow, the motion will be granted in part and denied in part.

I. **Background**

Plaintiff, Antron Talley ("Plaintiff" or "Talley") is a *pro se* inmate who has been granted leave to proceed *in forma pauperis*. Although currently housed at the SCI Forest, the alleged incidents giving rise to this lawsuit, occurred when Talley was previously housed at ACJ.[2] Defendant movants herein are ACJ Warden Orlando Harper, then-Deputy Warden Emerick, now-deputy Warden Wainwright, Correctional Officers Rubble, Raible, Arlotta, Mazzocca,

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including trial and the entry of a final judgment. See ECF Nos. 11 and 94.

[2] At the time of the incidents described in the instant Complaint, Talley was being held on a number of state charges which were filed at Criminal No. CP-02-CR-0017489-2013. These state charges were eventually withdrawn and Talley was then charged in the United States District Court for the Western District of Pennsylvania with possession of a firearm and/or ammunition by a convicted felon under 18 U.S.C. §§ 922(g)(1) and 924(e). After a bench trial, Talley was found guilty of the charge and is awaiting sentencing. *See* Criminal Docket for Case No. 2:13-cr-265 (W.D. Pa.).

Brojovich, Zoller, Butler, and the Correction's Emergency Response Team ("CERT Team") (collectively, "County Defendants").[3]

The claims in the Amended Complaint relate to an approximate eight-month period from December 19, 2013, through August 2014.

In the Amended Complaint Talley alleges he was assaulted without justification and injured after an altercation[4] with a corrections officer Arlottta on December 19, 2013. (ECF No. 112, para. 20). The alleged injuries from that altercation included fractured left thumb, fractured jaw that also caused temporomandibular joint syndrome ("TMJ"), an injured right knee, along with mental and emotional injuries. (ECF No. 112 at para. 20). Defendant Arlotta does not move to dismiss the claims of excessive force arising out of the December 19, 2013 incident. (ECF No. 124 at 2).

Following that altercation, Talley was transferred to the Disciplinary Housing Unit (DHU). He then was "refused meals" and thus pretended to be suicidal so he could be transferred to the Mental Health Unit ("MHU"), also known as pod 5C, where inmates with mental problems are housed. (ECF No. 112, para. 21). While there, Talley alleges that Defendant Corrections Officer Brosovich refused to provide him showers and fed him bag meals, which caused Talley to lose a "tremendous amount of weight that was not healthy to lose, and developed sores in his crotch area due to not receiving a shower." (ECF No. 112 at para. 21). Mr. Talley remained on this pod until January 28, 2014, when he was transferred back to the DHU. (ECF No. 112, para. 21).

---

[3] Talley's claims of deliberate indifference to his serious medical needs as to other defendants are addressed by separate Memorandum Opinion and Order on this date. Talley has not sued Allegheny County.

[4] Talley was convicted of aggravated assault and assault by prisoner on April 18, 2017, and was sentenced on May 24, 2017. *Commonwealth v. Talley*, CP-02-CR-0001397-2014.

He then returned to pod 8E on January 28, 2014, had a hearing in front of the program review committee and was found guilty of assaulting a corrections officer. (ECF No. 112, para. 23). Defendant Warden Harper and Deputy Warden Emerick conducted this hearing to determine whether Talley should continue to be held in the DHU. Talley makes general allegations that he was denied proper procedural due process by Harper and Emerick and that he was placed in administrative custody without cause. (ECF No. 112 at para. 23). He remains in administrative custody to this day. (ECF No. 112 at para. 23).

During the time that he was in the DHU and the MHU, he was dissatisfied with his food, the conditions of his confinement, particularly denial of showers, his medical care and he claims he was sprayed with pepper spray.

Talley further alleges that normally inmates are permitted to shower three days per week, but that Officer Zoller, who controlled showers, would not permit Talley to shower; Talley did not shower from January 28, 2014 to February 27, 2014 (in addition to lack of showers while in the other unit). (ECF No. 112 at para. 24). He further alleges that Zoller should be held accountable for the conditions of his cell, specifically, that it had mold, was cold, and that he was only given one sheet and one blanket, and that such conditions caused his crotch sores to get worse. (ECF No. 112 at para. 24).

On June 18, 2014, Talley was involved in another altercation with a corrections officer and was placed on pod 5C (MHU) until July 11, 2014. (ECF No. 112, paras. 26-28). Talley alleges that once returned to pod 5C from the DHU, Brojovich placed him on "loaf" meals (whereby daily food is compressed into a loaf shape) for six days, which he alleges included 6 day old food rather than fresh food, in retaliation for Talley throwing juice at Correction Officer Mazzocca. (ECF No. 112 at para 27). Talley alleges that Mazzocca poured juice into Talley's

cup and threw the rest of the juice through the cell door, causing Talley to slip and bruise his hip. (ECF No. 112 at para. 26). Talley also alleges that from June 18, 2014 through July 11, 2014 he was placed in an unsanitary cell which had feces around the toilet, urine on the floor, bunk which had been rusted from urine and no mattress on the bunk. (ECF No. 112 at 28).

Brojovich is further alleged to have been present when defendant Carla Ivan, a medical provider, gave him three shots against his will. (ECF No. 112 at para. 22). He thought the cell was unsanitary and he did not receive soap, rags, toothpaste or a toothbrush as such items are not handed out in the pod. (ECF No. 112, para. 28).

As to Defendant Rubble, Talley alleges that on August 19, 2014, Rubble emptied a can of pepper spray toward Talley, after Talley was told he had to move his cell. (ECF No. 112 at 29). As noted earlier, Defendant Rubble does not request dismissal of this claim. In addition, however, as to Defendant Butler, Talley alleges that after he was sprayed with pepper spray, Butler refused Talley's request for a shower even though Butler saw the orange foam marks, smelled the aroma, and knew how the spray would affect him. (ECF No. 112 at para. 30). Talley alleges he suffered scabs on his skin where the spray landed due to the lack of shower.

Talley further alleges that on August 31, 2014, Defendant Sergeant Raible fabricated that Talley had barricaded himself in his cell and called the Correction Emergency Response (CERT) team to extract him, and that during this incident the team, under Raible's command, used excess force in strapping him to a bunk, which caused Talley to suffer a broken wrist and ankle swelling. (ECF No. 112 at 31). The identities of the members of the CERT Team appears to be unknown; Talley alleges they wear masks to hide their identity

Talley also alleges that Defendant Harper and Emerick intentionally denied him access to medical treatment, as described supra, and due to their denial of constitutional protections he

was unfairly placed in solitary confinement, which rises to the level of cruel and unusual punishment.

## II. Standard of Review

### A. Pro Se Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or the litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982.

In a section 1983 action, the court must liberally construe the *pro se* litigant's pleadings and "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999)); *see also Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting *Higgins*, 293 F.3d at 688). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. *Gibbs v. Roman*, 116 F.3d 83 (3d Cir. 1997); *see, e.g., Nami*, 82 F.3d at 65 (discussing Fed. R. Civ. P. 12(b)(6) standard); *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir. 1990) (same). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g., Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

5

### B. Motion to Dismiss Pursuant to Rule 12(b)(6) – The Legal Standard

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well settled. Under Federal Rule of Civil Procedure 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). Nevertheless, the court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000), or the plaintiff's "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).

When considering a Rule 12(b)(6) motion, the court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of his claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The court does not consider whether a plaintiff will ultimately prevail. *See id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

Moreover, the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint—regardless of whether the plaintiff requests to do so—when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile. *See Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).

**III.    Discussion**

At the outset, we reiterate that Talley concedes that Defendants Mazzocca and Wainwright should be dismissed from this action because their "misconduct did not rise to the level of the cruel and unusual punishment." (ECF No. 129 at 16). Mazzocca was the correction officer who allegedly threw juice through Talley's cell door, causing him to fall; Wainwright was alleged to have approved placing Talley on loaf meals. (ECF No. 112 at para. 27). Therefore, those claims shall be dismissed, and to the extent the motion to dismiss request dismissal, it will be denied as moot.

Furthermore, Defendant Rubble does not seek dismissal for the alleged pepper spraying incident in August 2014, and defendant Arlotta does not seek dismissal for the claim he used excessive force when he assaulted Talley on December 14, 2013. Those claims therefore remain.

Plaintiff alleges he was a pretrial detainee in the Amended Complaint (ECF No. 112 at ¶ 3) but then argues in his brief that he was serving time on another state conviction. (ECF No. 129 at 3). The earliest date on which he alleges injury is December 19, 2013, the date of the altercation with Arlotta. We take judicial notice of the uncontroverted record, including docket

sheets of the state court criminal proceedings which establish that Talley was a pretrial detainee at all relevant times.[5]

To establish a prima facie case under § 1983, Talley must demonstrate that a person acting under color of law deprived him of a federal right. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). He must also show that the person acting under color of law "intentionally" violated his constitutional rights or acted "deliberately indifferent" in violation of those rights. *See, e.g., County of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998); *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) (citing *Hill v. California*, 401 U.S. 797, 802–05 (1971)); *see also Berg v. County of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000).

Moreover, "[i]n order to sustain a § 1983 claim against an individual acting under the color of state law, a plaintiff must demonstrate that the defendant was personally involved in the alleged violations of his or her federal rights." *Andrews v. Kenney*, No. 16-1872, 2017 WL 2591931, at *2 (E.D. Pa. June 14, 2017) (citing *Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

**Excessive force**

A pretrial excessive force claim is governed by the Due Process Clause of the Fourteenth Amendment, which "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, ––– U.S. ––––, 135 S.Ct. 2466, 2473, 192 L.Ed.2d 416 (2015) (quoting Graham v. Connor, 490 U.S. 386, 395 n.10, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The Court finds that at this early stage of the litigation and based upon his allegations and inferences that can be drawn therefrom, Talley has stated a claim as to

---

[5] Talley argues instead that he was a "prisoner" at the time because he had not yet hit the maximum sentence for one of his prior state convictions, arising in the Court of Common Pleas of Lawrence County at CB-37-CR-874-2004. In that case, Talley was sentenced on March 9, 2005 to 45 months but not more than ten years of incarceration; the docket sheet reflects he was on probation starting May 29, 2009. Obviously, he was not a prisoner when he was arrested by the Pittsburgh Police on August 28, 2013 and charged with various state court offenses which were later nolle prossed on November 4, 2014. CP-02-CR-0017489-2013.

Defendant Raible and as to the unnamed CERT Teamindividuals. Talley has allege that under Raible's instructions or otherwise, they used excessive force against him in strapping him to a bunk, resulting in a broken wrist and ankle swelling. Although Defendants argue that the named defendant "CERT team" is not a person under the law, at this juncture, we will treat this as if Talley had listed several John Does rather than the team itself as defendants, and the claims against these unknown individuals will proceed.

**Conditions of confinement**

Conditions of confinement claims filed by pretrial detainees are not analyzed under the Eighth Amendment but, instead are analyzed under the Due Process Clause of the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520 (1979); *Hubbard v. Taylor*, 399 F.3d 150, 157–60 (3d Cir. 2005).

When evaluating the prison conditions to which a pretrial detainee is subject, "the proper inquiry is whether those conditions amount to punishment of the detainee" without due process of law. *Bell*, 441 U.S. at 535. There is a "distinction between punitive measures that may not be constitutionally imposed prior to a determination of guilt and regulatory restraints that may." *Id.* (internal citations omitted). A constitutional violation exists if the court finds that the conditions of confinement are not reasonably related to a legitimate, non-punitive governmental objective. *Bell*, 441 U.S. at 538-39.

Third Circuit precedent establishes that, "in regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the Eighth Amendment for convicted prisoners." *Boring v. Kozakiewicz* 833 F.2d 468, 471 (3d Cir. 1987) (quoting *Hamm v. DeKalb Cnty.*, 774 F.2d 1567 (11th Cir. 1985)). As the requirements of the Eighth Amendment set a

9

"floor" for analysis of Fourteenth Amendment due process claims, it is worth noting that a pretrial detainee's "desire to be free from discomfort" is insufficient to establish a fundamental liberty interest protected by the constitution. *See Bell,* 441 U.S. at 534–35.

Talley alleges that Brojovich, Zoller, and Butler violated his constitutional rights by denying his access to a shower, and that this caused physical injury. His claim is that he did not shower for nearly two months, was provided no supplies for personal hygiene, and that after he was pepper sprayed, he could not shower to flush the contamination off his skin, resulting in sores. The Third Circuit has established that a "minimal civilized measure of life's necessities" does not dictate that one must shower each day or even each week. *See Laurensau v. Romarowics*, 528 Fed.Appx. 136, 139–140 (3d Cir. June 13, 2013) (no constitutional violation where inmate was denied access to showers for seven days); *Dockery v. Beard*, 509 Fed.Appx. 107, 113 (3d Cir. Jan. 11, 2013) ("limiting inmates to one shower a week does not violate Eighth Amendment"); *Adderly v. Ferner*, 419 Fed. App'x. 135, 139–40 (3d Cir. Mar. 10, 2011) (no constitutional violation where inmate was denied access to showers for seven days); *Tapp v. Proto,* 404 Fed. App'x. 563, 567 (3d Cir. Dec. 13, 2010) (no denial of due process where pre-trial detainee was denied access to exercise and shower facilities two days each week). Under this and other case law, the claim that Talley was denied the ability to shower over this extended period of time is not frivolous, nor is the claim that he was not permitted to decontaminate himself from the chemicals in the pepper spray, and therefore, will not be dismissed.

Talley's complaint also alleges several unsanitary, unsafe or otherwise inadequate conditions, such as black mold, urine and feces. At this stage of the proceedings, it would appear that Talley's allegations are sufficient to state a claim for "punishment" in violation of

the Fourteenth Amendment. The conditions of which he complains are deprivation of basic sanitation and will also remain at this juncture, although it is unclear which defendants he alleges should be held responsible. Presumably, discovery will clarify this, and Tally must prove sufficient personal involvement in the denial of said humane conditions of confinement.

Talley has alleged that he was given "loaf meals" or "bag meals" by Brojovich as a punishment for his altercation with Arlotta or otherwise, and that these meals, some of which consisted of food up to 6 days old, resulted in him losing a substantial amount of weight. Although the law requires a substantial deprivation of food to trigger constitutional protection, and isolated instances of spoiled food does not suffice, we find that these claims meet the minimum requirement for stating a violation of a constitutional right at this juncture, especially given that Talley has alleged he lost substantial amount of weight as a result.

The motion to dismiss will further be denied as to claims against Defendants Harper and Emerick, wherein Talley alleges that the program review committee denied him procedural due process at the hearing concerning the assault on Arlotta. Taking the facts as alleged in the Amended Complaint in the light most favorable to the plaintiff, it appears Talley adequately alleges that his solitary confinement is cruel and unusual punishment as he was denied adequate procedural protections.

**Medical Care**

Talley alleges that Defendants Harper and Emerick acted with deliberate indifference to a serious medical need. (ECF No. 112 at para. 35). Talley has not, however, alleged their personal involvement or awareness of substantial risk of harm arising from any denial of care, (nor has he alleged any of the other County Defendants knew of and disregarded an excessive risk to his health). A prison official's deliberate indifference to the serious medical needs of an

11

inmate may violate the inmate's Eighth and Fourteenth Amendment rights. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); *Bowring v. Godwin*, 551 F.2d 44, 46 (4th Cir. 1977). However, not every claim of inadequate medical treatment by an inmate is sufficient to rise to the level of a constitutional violation. In order to establish a constitutional claim for the denial of adequate medical treatment "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Deliberate indifference is demonstrated by "the deliberate deprivation of adequate medical care or the defendant's action or failure to act despite his or her knowledge of a substantial risk of serious harm." *Pew v. Connie*, 1997 WL 717046, *4 (E.D. Pa. Nov.14, 1997). It is well-established that the doctrine of respondeat superior is not an acceptable basis for liability under Section 1983. *See e.g. Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, a Section 1983 plaintiff must establish that supervisory officials participated in or had personal knowledge of and acquiesced in the actions which are alleged to have constituted a constitutional deprivation. *Miller v. Hoffman*, 1999 WL 415397, *11 (E.D.Pa. June 22, 1999).

The Amended complaint is silent as to any personal involvement or awareness of a substantial risk of harm arising from denial of medical care as to these defendants, and therefore, the Motion to Dismiss will be granted as to deliberate indifference to a serious medical need as to Defendants Harper and Emerick.

**IV.**     **Conclusion**

For the reasons stated herein, the Motion to Dismiss (ECF NO. 124) will be GRANTED as to the deliberate indifference to a serious medical need and DENIED as to all other claims.

Insofar as Plaintiff has voluntarily withdrawn his claims against Mazzocca and Wainwright, those claims will be dismissed.

## ORDER OF COURT

**AND NOW** this 11th day of December, 2017, it is hereby **ORDERED** that the motion to dismiss (ECF No. 124) is **GRANTED IN PART and DENIED IN PART**. The claims against defendant Mazzocca and Wainwright shall be dismissed as having been voluntarily withdrawn by Plaintiff. The claims of deliberate indifference to a serious medical need are DISMISSED as to the Defendants Harper and Emerick.

It is hereby FURTHER ORDERED that remaining Defendants shall file a responsive pleading on or before **December 29, 2017**.

/s Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: ANTRON TALLEY
GU 9829
SCI Forest
P.O. Box 945
Marienville, PA 16239
(via U.S. First Class Mail)

Record counsel via CM-ECF electronic notice