IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| ANTRON TALLEY, | ) | |
| Plaintiff, | ) ) ) | 2:14-CV-01411-CRE |
| vs. | ) ) | |
| MR. ORLANDO H. HARPER, WARDEN; MR. EMERICK, DEPUTY WARDEN; MRS. ROBIN DEVAUGHN, MEDICAL SUPER.; MARIA BETH LONG, NURSE; MRS. CARLA IVAN, NURSE; MR. RUBBLE, SERGEANT; MR. RAIBLE, (CERT) SGT.; MR. ARLOTTA, CORRECTION OFF.; MR. BROJOVICH, CORRECTION OFF.; MR. ZOLLER, CORRECTION OFF.; MR. BUTLER, CORRECTION OFF.; AND CORRECTION'S EMERGENCY RESPONSE TEAM, (CERT); | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Cynthia Reed Eddy, Chief United States Magistrate Judge.

I.  **INTRODUCTION**

Plaintiff Antron Talley initiated this civil action *pro se* on October 17, 2014 alleging that his civil rights were violated in various ways by corrections and medical staff when he was held as a pretrial detainee in Allegheny County Jail in Pittsburgh, Pennsylvania. Presently for disposition is the following:

(1) A motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 filed by Robin DeVaughn ("Administrator DeVaughn"), Maria Beth Long ("RN Long") and Carla Ivan ("RN Ivan") (collectively "Medical Defendants") (ECF No. 182).

The motion is fully briefed and ripe for disposition. This court has subject matter jurisdiction

1

pursuant to 28 U.S.C. § 1331. For the reasons that follow, the Medical Defendants' motion for summary judgment will be **GRANTED**.

## II. BACKGROUND

Plaintiff Antron Talley ("Plaintiff" or "Talley") is a state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC") currently confined at the State Correctional Institution at Forest ("SCI Forest"). Plaintiff brings this lawsuit in connection with the time he was held as a pretrial detainee in Allegheny County Jail ("ACJ") in Pittsburgh, Pennsylvania and claims that Defendants Maria Long, Carla Ivan and Robin DeVaughn denied him medical treatment in violation of the Fourteenth Amendment.

On December 19, 2013, Plaintiff was in an altercation with corrections officers at ACJ that caused him physical injuries to his left thumb, jaw, right knee and claims caused him emotional distress. Talley was convicted of aggravated assault and assault by prisoner on April 18, 2017 for this altercation and was sentenced on May 24, 2017.

On that same date, Plaintiff was seen by medical staff not named in this lawsuit and it was noted that Plaintiff had a scratch on the left of his nose and cheek, head pain, and he was referred for an x-ray of his left hand. Plaintiff claims that he received the x-ray, but that Medical Defendants have not shown any documents proving that he ever received an x-ray and thus simultaneously argues he never received an x-ray of his left hand. *See* Pl.'s Dec. (ECF No. 197-1 p.4) ("He looked at my hand and seen [sic] it was swollen and took x-rays.") and Pl.'s Depo. Tr. (ECF No. 184-2 at 5-6) ("I think they did take some x-rays at the Allegheny County Jail when the incident did happen"); *but see* Pl.'s Statement of Material Fact ("SMF") (ECF No. 194) at ¶ 10 ("Plaintiff was never taken to the clinic for 'x-rays' and there is no report, or x-rays to verify that that (sic) actually happened.").

2

After the altercation and medical treatment, Plaintiff was transferred to the Disciplinary Housing Unit ("DHU"). He then pretended to be suicidal in order to be housed on the Mental Health Unit ("MHU"), and was housed there from December 20, 2013 to January 28, 2014. Upon admission into the MHU on December 20, 2013, the Mental Health Unit Admission Form noted that Plaintiff reported that he had a history of migraines, pain in his left thumb from the altercation with the corrections officers, no dental problems and was not currently taking any medication. Allegheny County Health Services, Inc. (ECF No. 185-4). Plaintiff was seen by medical and/or mental health staff regularly during his duration in the MHU. *See* Progress Notes (ECF No. 185-5 at 2-15). A general description of Plaintiff's medical treatment is outlined *infra*.

On January 6, 2014, Plaintiff complained of an itchy patch on his neck and requested Topamax or Elavil for chronic migraines and Motrin. (ECF No. 185-5 at 7). The attending Nurse Practitioner ordered Hydrocortisone, Zyrtec, Mortin, Topamax and Pamelor. *Id*. On January 8, 2014, Plaintiff was threatening another inmate and placed on assault precautions. *Id*. at 8-9. On January 10, 2014, Plaintiff would not get up for his medications, though Plaintiff claims he was "calm and cooperative." (ECF No. 185-5 at 9); (ECF No. 194 at ¶ 23). On this same day, Dr. Rodriguez gave RN Ivan a verbal order for Benadryl and Thorazine to be given as needed to calm Plaintiff every six hours for 150 days. (ECF No. 185-5 at 9).

On January 24, 2014, RN Ivan indicated that Plaintiff was threatening to rape and kill staff and was banging on his cell door in a disruptive fashion. (ECF No. 185-5 at 11). Plaintiff denies that he was threatening to rape and kill staff. Dr. Rodriguez gave a verbal order to place Plaintiff on assault precautions and ordered the intramuscular injection of Benadryl and Thorazine to calm Plaintiff and these medications were administered without issue. *Id*.; (ECF No. 185-8). Plaintiff argues that it was a violation of his civil rights to receive the injection without a physician's order

3

and RN Ivan acted without a physician's order. (ECF No. 194 at ¶ 29).

On January 26, 2014, Plaintiff was readmitted to the MHU. (ECF No. 185-4).

During his stay in MHU, Plaintiff submitted three Health Services Request Forms. On January 30, 2014, Plaintiff submitted a medical request to be seen by medical for pain in his lower back, left thumb and claims that he had been asked to be seen for over a month. (ECF No. 197-23).[1] On February 17, 2014, Plaintiff submitted a medical request to be seen by medical for pain in his lower back, left thumb and feet. (ECF No. 197-28). On February 23, 2014, Plaintiff submitted a medical request for Motrin. (ECF No. 197-29). On that same date, Plaintiff received an order for Motrin. (ECF No. 185-6).

On February 26, 2014, Plaintiff submitted an Official Inmate Complaint Form complaining that he submitted medical request forms on January 30, 2014, February 17, 2014 and February 23, 2014 which were not responded to and complained that his left thumb, another illegible body part and feet were hurting. (ECF No. 197-32).

On February 27, 2014, a medication nurse reported that plaintiff was not taking his medications (Motrin, Pamelor and Topamax) and did not reorder those medications, which Dr. Patterson approved on March 1, 2014. (ECF No. 185-6).

On March 1, 2014, Dr. Rodriguez discontinued the prescriptions for Benadryl and Thorazine. (ECF No. 185-6). On March 5, 2014, a nurse practitioner discontinued Topamax and ordered Excedrin for Plaintiff's migraines. *Id*.

On March 8, 2014, Plaintiff submitted another Official Inmate Complaint Form

---

[1] It is noted that many of Plaintiff's Exhibits are illegible as presented on the electronic docket, as they are carbon copies which were written in pencil. Plaintiff submitted original copies of these documents to chambers, (which are also at times illegible) and the substance of the request forms are taken from the originals. Should Defendants seek to review these documents, they will be made available to them for in-chambers review.

complaining that: "I stopped the nurse [and] . . . I asked her why wasn't I being allowed medical attention for the things me and her talked about the week before, also in my complaint, and also to other nurses[.] She told me I'm already receiving pain medication, and I'm not taking them in the morning that's why I'm not being seen. I was on Topamax[,] mo[]trin, [illegible], [illegible] for my migraine headaches, the [illegible] I only take at nite[sic], I only receive mo[]trin and [illegible] Excedrin in the morning which are [basically] the same thing, not a good substitute for Topamax. How could I be given medication for only left thumb, lower back, left ear and feet without being seen, I've been seen for my migraines only, and I'm receiving medication for just that alone." (ECF No. 197-32).

On March 12, 2014, a nurse practitioner discontinued Motrin for Plaintiff and ordered Tylenol. (ECF No. 185-6).

On March 14, 2014, Plaintiff reported to the attending medical professional that he had submitted medical request slips that were not answered and was signed up for the clinic list. (ECF No. 185-3 at 46). That same day, Plaintiff refused Excedrin. (ECF No. 185-9 at 2). Plaintiff claims he "never refused any medication on" this date in his response to the Medical Defendants' SMF. (ECF No. 194 at ¶ 48). However, Plaintiff admitted in his deposition that he refused to take medication at times because "he found out they [were] giving me the wrong medications." Pl.'s Depo. Tr. (ECF No. 185-2 at 13-14). *See also* (ECF 194 at ¶ 57) (admitting to refusing medication on one occasion because Defendant Ivan tried to give him medication that was not Motrin).

On March 15, 2014, Plaintiff was seen for a stability check and stated he had medical issues including pain in his left thumb, infected fingernail on his left ring finger, lower back pain and outstanding medical requests from January 20, February 17 and 23, 2014. (ECF No. 185-11 at 2). The attending medical professional requested that he be placed on the clinic list. *Id.*

5

On March 20, 2014, Plaintiff was seen by sick call and complained about migraines and the attending medical professional noted he was already taking Excedrin and Tylenol and ordered no change in medications and to continue the current treatment and increase fluids. (ECF No. 185-10 at 2).

On March 28, 2014, Plaintiff submitted a request to Administrator DeVaughn complaining that he wrote three health service request forms on January 30, 2014, February 17, 2014 and February 23, 2014 and has not yet received medical attention. He further states that he wrote three complaint forms on February 26, 2014, March 8, 2014 and March 15, 2014 about the refusal of medical attention. He further complained that the migraine medicine he is receiving is not working. (ECF No. 197-47).

On April 26, 2014, Plaintiff complained about pain in his thumb and was ordered Motrin the same day. (ECF No. 185-6 at 8).

After Plaintiff filed this lawsuit, he was transferred to Northeast Ohio Correctional Center where he alleges that he was diagnosed with temporomandibular joint dysfunction ("TMJ") – though this diagnosis is not apparent from the record – which he alleges was caused by blows taken to his face during his assault on corrections officers and also caused his migraines.

Generally, Plaintiff claims that RN Ivan violated his civil rights by injecting him with medication without a physician's order and all of the Medical Defendants ignored his requests for medical care.

### III. STANDARD OF REVIEW

The standard for assessing a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is well-settled. A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

6

show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 250.

On a motion for summary judgment, the facts and the inferences to be drawn therefrom should be viewed in the light most favorable to the non-moving party. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Hudson v. Proctor & Gamble Paper Prod. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009) (citations omitted). It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. *See Anderson*, 477 U.S. at 255; *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004); *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S at 247-48. An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with respect to that issue. *Id*. "Where the record taken as a whole could not lead a reasonable trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'." *Matsushita*, 475 U.S. at 587; *Huston*, 568 F.3d at 104.

This standard is somewhat relaxed with respect to *pro se* litigants. Where a party is representing himself *pro se*, the complaint is to be construed liberally. A *pro se* plaintiff may not, however, rely solely on his complaint to defeat a summary judgment motion. *See, e.g., Anderson*, 477 U.S. at 256 ("Rule 56(e) itself provides that a party opposing a properly supported motion for

7

summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). Allegations made without any evidentiary support may be disregarded. *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000). In order to survive a motion for summary judgment on a § 1983 claim, a plaintiff must adduce evidence that the defendants acted under color of state law, a fact not in dispute *sub judice*, and that the plaintiff was deprived of a federal constitutional right.

## IV. DISCUSSION

### a. Injunctive and Declaratory Relief

At the outset, Plaintiff seeks declaratory and injunctive relief. However, it is clear from the record that Plaintiff has not been incarcerated at ACJ since at least October 15, 2015 when he was transferred to Northeast Ohio Correctional Center ("NEOCC"). *See* Change of Address (ECF No. 48). A pretrial detainee's transfer to another institution moots a claim for injunctive and declaratory relief because the inmate is no longer subject to the conditions he alleges are unconstitutional. *Abdul-Akbar v. Watson*, 4 F.3d 195, 206-07 (3d Cir. 1993); *see also Weaver v. Wilcox*, 650 F.2d 22, 27 (3d Cir. 1981) ("[A] prisoner lacks standing to seek injunctive relief if he is no longer subject to the alleged conditions he attempts to challenge."). Plaintiff has been out of ACJ custody since at least 2015, has not returned to ACJ and is currently incarcerated at SCI Forest. While this transfer moots his claims for declaratory and injunctive relief, it does not moot his claims for damages. *See United States ex rel. Jones v. Rundle*, 453 F.2d 147, 150 (3d Cir. 1971). Therefore, Plaintiff does not have standing to seek injunctive or declaratory relief here and Defendants are entitled to summary judgment on Plaintiff's claims for injunctive and declaratory relief.

### b. 42 U.S.C. § 1983

To establish a *prima facie* case under § 1983, Plaintiff must demonstrate that a person acting under color of law deprived him of a federal right. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). He must also show that the person acting under color of law "intentionally" violated his constitutional rights or acted "deliberately indifferent" in violation of those rights. *See, e.g., County of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998); *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) (citing *Hill v. California*, 401 U.S. 797, 802–05 (1971)); *see also Berg v. County of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000).

A plaintiff alleging a constitutional violation "must portray specific conduct by [ ] officials which violates some constitutional right." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). By doing so, a plaintiff must demonstrate a defendant's "personal involvement" in the alleged constitutional violation by adequately alleging either (1) the defendant's personal involvement in the alleged violation; or (2) his actual knowledge and acquiescence in the wrongful conduct. *Id.* (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Id.* (citations omitted).

Moreover, "[i]n order to sustain a § 1983 claim against an individual acting under the color of state law, a plaintiff must demonstrate that the defendant was personally involved in the alleged violations of his or her federal rights." *Andrews v. Kenney*, No. 16-1872, 2017 WL 2591931, at *2 (E.D. Pa. June 14, 2017) (citing *Rode*, 845 F.2d at 1207).

#### i. Deliberate Indifference to Serious Medical Needs

Plaintiff alleges that the Medical Defendants were deliberately indifferent to his serious

medical needs by denying him medical care for his injuries sustained in the altercation of the corrections officer, and receiving intramuscular injections against his will without a physician's orders.

For purposes of analyzing Plaintiff's medical deliberate indifference claim, the legal analysis is the same whether Plaintiff was a pretrial detainee or a convicted person. A pretrial detainee's right to adequate medical care should be analyzed under the well-settled standard established in *Estelle v. Gamble*, 429 U.S. 97 (1976), which compels prison officials to provide "basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Estelle*, 429 U.S. 97 (1976)). *See also Natale v. Camden County Correctional Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (analyzing pretrial detainee's claim of inadequate medical treatment under the Due Process Clause of the Fourteenth Amendment and not the Eighth Amendment's proscription against cruel and unusual punishment).

In accordance with the Eighth Amendment's prohibition against cruel and unusual punishment, the government is obliged "to provide medical care for those whom it is punishing by incarceration." *Estelle*, 429 U.S. at 103. The "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Id*. at 104 (citation omitted). Such indifference to a serious medical need can be shown by:

> an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

*Neiswonger v. Montgomery*, 2016 WL 7375032, at *3 (W.D. Pa. Dec. 20, 2016). *See also Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009) ("Deliberate indifference may be shown by

intentionally denying or delaying medical care."); *Foye v. Wexford Health Sources Inc.*, 675 Fed.Appx. 210, 215 (3d Cir. 2017) (unpublished) ("Deliberate indifference" may be inferred when a prison official knows of a prisoner's need for medical treatment but intentionally fails to provide it; delays necessary medical treatment for a non-medical reason; or prevents a prisoner from receiving medical treatment that was needed or recommended."). "[W]hether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed ... deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05 (citations omitted).

A medical need is "serious" if "it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation omitted). "The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment." *Id*. The "deliberate indifference" a plaintiff must show through a complaint's factual allegations lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other," *Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994), and is frequently equated with recklessness as that term is defined in criminal law. *Id*. This standard, however, "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979). Where a prisoner has received medical care and the adequacy of the treatment is challenged, courts are often reluctant to second guess professional medical judgment. *Id*. An inmate's disagreement with the diagnosis or course of treatment does not suffice to establish "deliberate indifference" under the Eighth

11

Amendment. *Estelle*, 429 U.S. at 106. Misdiagnosis or "medical malpractice cannot give rise to a violation of the Eighth Amendment," *White v. Napoleon*, 897 F.2d 103, 106 (3d Cir. 1990), because negligent treatment is not actionable as cruel and unusual punishment prohibited by the Fourteenth Amendment. *See also Wilson v. Seiter*, 501 U.S. 294, 305 (1991) (mere negligence does not constitute deliberate indifference). The Supreme Court in *Estelle v. Gamble* explained:

> in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

429 U.S. at 105–06.

Because an individual can only be responsible for their personal involvement or actual knowledge and acquiescence in the alleged constitutional violation, the claims of deliberate indifference alleged against each Medical Defendant will be addressed separately.

### 1. *Injection of Thorazine and Benadryl*

Plaintiff alleges that RN Ivan gave him three shots[2] of Thorazine against his will after he was involved in an altercation and these shots were not prescribed and caused him sciatic pain and knocked him unconscious and that this constituted deliberate indifference to his serious medical needs in violation of the due process clause of the Fourteenth Amendment.

It is undisputed from the record that, Dr. Rodriguez ordered certain medications be given

---

[2] Plaintiff claims that three injections were administered to him, while the medical records indicate that only two injections were administered to him. This dispute is immaterial to the outcome of this motion, but the court will nonetheless view the record in Plaintiff's favor.

as needed to calm Plaintiff, including Benadryl and Thorazine, an anti-psychotic medication, on January 10, 2014. On January 24, 2014, RN Ivan administered these medications as ordered by Dr. Rodriguez and Plaintiff received an injection of these medications by a non-party medical professional. While Plaintiff disputes whether he was threatening to "rape and kill" staff prior to receiving the injection, it is not disputed that he was placed on assault precautions prior to receiving the injection. There is no evidence of record that, as Plaintiff argues, these medications were not prescribed to him. Further, there is no evidence that Plaintiff refused treatment. Seemingly, Plaintiff disputes that a physician prescribed these medications – which uncontroverted record evidence dispels – and takes issue with the way that the medications were administered. Plaintiff's claims are simply a disagreement over the course of treatment determined necessary by medical professionals and the court will not second-guess professional medical judgment by treating medical professionals in the administration of prescribed medications. *See Estelle*, 429 U.S. at 106.

Even assuming that Plaintiff refused to receive the anti-psychotic medications via injection, the Court of Appeals for the Third Circuit has held that "authorities may administer anti-psychotic drugs to an unwilling patient only where the decision is a product of the authorities' professional judgment" and the "decision of the institution's staff is presumed valid unless it is shown to be 'a substantial departure from accepted professional judgment, practice or standards.' " *White v. Napoleon*, 897 F.2d 103, 112 (3d Cir. 1990) (quoting *Rennie*, 720 F.2d at 269, 274). There is no evidence of record that Dr. Rodriguez's order of Thorazine and Benadryl, or that RN Ivan's administration of those ordered medications through injection were a "substantial departure from accepted professional judgment, practice or standards." *Id*.

Accordingly, there is no evidence of record that would allow a reasonable jury to conclude that RN Ivan violated Plaintiff's civil rights by administering medications previously prescribed

to him by Dr. Rodriguez, or that RN Ivan substantially departed from accepted judgment, practice or standards and accordingly, RN Ivan is entitled to summary judgment on this claim.

## 2. *Denial of Medical Treatment*[3]

Plaintiff claims that the Medical Defendants ignored his numerous medical request slips complaining of a lack of treatment of his thumb, jaw or ear, feet and low back. Medical Defendants are entitled to summary judgment for myriad reasons.

Assuming that Plaintiff suffered serious medical needs to meet the first prong of a deliberate indifference claim, his complaints regarding his care amount to at most, medical negligence. To the extent that Plaintiff argues that he failed to receive an x-ray of his left hand as ordered after his assault on the corrections officer, this failure does not violate his civil rights, and amounts at most to medical malpractice. *See Estelle*, 429 U.S. at 107 ("A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice[.]"). Further, to the extent that Plaintiff alleges that the medical defendants failed to diagnose his TMJ, this again, is at most medical negligence. *Id.* at 106 ("a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a claim of medical mistreatment under the [Fourteenth] Amendment.").

The remainder of Plaintiff's claims simply indicate that he disagrees with the treatment that he received. Plaintiff received pain medication during his time in ACJ, but contends that he should have received a nerve test, MRI, x-ray or bloodwork to determine the diagnosis of his thumb, back, feet and ear pain. This is simply a disagreement of the course of treatment determined

---

[3] The Court will presume that the Medical Defendants had actual knowledge and acquiesced in Plaintiff's alleged constitutional violations, as Plaintiff complained of his lack of medical treatment to Administrator DeVaughn in a Request to Staff Member on March 28, 2014, alleges RN Long received his requests for medical care forms, and that he complained at various times of his medical issues to RN Ivan.

by medical professionals and is not actionable under the Fourteenth Amendment.[4]

## V.     CONCLUSION

The entire record, viewed most favorably to Plaintiff, could not lead a reasonable fact finder to conclude that the Medical Defendants have been deliberately indifferent in violation of the Fourteenth Amendment and accordingly, the Medical Defendants motion for summary judgment is granted.

An appropriate Order follows.


Dated: March 13, 2019.

By the Court,
s/ Cynthia Reed Eddy
Cynthia Reed Eddy
Chief United States Magistrate Judge


cc:     ANTRON TALLEY
        GU 9829
        SCI Forest
        P.O. Box 945
        Marienville, PA 16239

---

[4] Peripherally, Plaintiff argues that he did not receive a physical examination, and instead was treated through a small window and believes that this constitutes deliberate indifference. This cannot constitute a deliberate indifference claim, as Plaintiff is not alleging that he was denied or delayed medical treatment, but rather disputes the quality of treatment he received, which, as explained at length, is not actionable under the Fourteenth Amendment. Additionally, Plaintiff argues that it was deliberate indifference for the Medical Defendants to not follow ACJ policy in treating him. Plaintiff does not express what policy he alleges was violated, but even if he did so, failure to follow ACJ or DOC policy does not rise to the level of a constitutional violation. *Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 154 (3d Cir. 2004) ("agency interpretive guidelines do not give rise to the level of a regulation and do not have the effect of law.").