IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| ANTRON TALLEY, | ) | |
| | ) | |
| Plaintiff, | ) | 2:14-CV-01411-CRE |
| | ) | |
| vs. | ) | |
| | ) | |
| MR. ORLANDO H. HARPER, WARDEN; | ) | |
| MR. EMERICK, DEPUTY WARDEN; | ) | |
| MRS. ROBIN DEVAUGHN, MEDICAL | ) | |
| SUPER.; MARIA BETH LONG, NURSE; | ) | |
| MRS. CARLA IVAN, NURSE; MR. | ) | |
| RUBBLE, SERGEANT; MR. RAIBLE, | ) | |
| (CERT) SGT.; MR. ARLOTTA, | ) | |
| CORRECTION OFF.; MR. BROJOVICH, | ) | |
| CORRECTION OFF.; MR. ZOLLER, | ) | |
| CORRECTION OFF.; MR. BUTLER, | ) | |
| CORRECTION OFF.; AND | ) | |
| CORRECTION'S EMERGENCY | ) | |
| RESPONSE TEAM, (CERT); | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Cynthia Reed Eddy, Chief United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff Antron Talley initiated this civil action *pro se* on October 17, 2014 alleging that his civil rights were violated in various ways by corrections and medical staff when he was held as a pretrial detainee in Allegheny County Jail ("ACJ") in Pittsburgh, Pennsylvania. Presently for disposition is the following:

(1) A motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 filed by Warden of ACJ Orlando Harper, then-Deputy Warden of ACJ Emerick, Corrections Officers Rubble, Raible, Arlotta, Brojovich, Zoller, Butler and the ACJ Corrections Emergency Response Team ("CERT") (collectively "Corrections Defendants") (ECF No. 187).

The motion is fully briefed and ripe for disposition. The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons that follow, the Corrections Defendants' motion for summary judgment is granted in part and denied in part.

## II.      BACKGROUND[1]

Plaintiff Antron Talley ("Plaintiff" or "Talley") is a state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC") currently confined at the State Correctional Institution at Forest ("SCI Forest"). Plaintiff brings this lawsuit in connection with the time he was held as a pretrial detainee in Allegheny County Jail ("ACJ") in Pittsburgh, Pennsylvania and claims that Defendants Warden Orlando Harper, then-Deputy Warden Emerick, Sergeant Rubble, Sergeant Raible, and Corrections Officers ("CO") Arlotta, Brojovich, Zoller, Butler, and the ACJ Corrections Emergency Response Team ("CERT") violated his civil rights. Each instance will be addressed separately.

### a.      Assault on CO Arlotta

On December 19, 2013, Plaintiff alleges that while he was outside his cell watching television, he began to walk back to his cell and saw CO Arlotta conducting a search of his cell. Apparently, Plaintiff had extra clothing and CO Arlotta was removing them from the cell. After Plaintiff tried to explain to CO Arlotta why he had extra clothing, he grabbed the clothes that had been taken out of his cell and began to walk away from his cell. CO Arlotta asked Plaintiff to stand against the wall. Plaintiff then told CO Arlotta that he had been searching his cell without him being there, so he could continue searching the cell without Plaintiff being present. Plaintiff then claims that CO Arlotta grabbed his arm and placed his other hand behind his back and pushed

---

[1]      Unless otherwise stated, the version of events recounted herein are taken from Plaintiff's accounts, as Defendants generally did not provide alternative accounts.

him against the wall and began throwing blows to Plaintiff's nose and face area. Plaintiff claims that his "main objective was to try to grab [CO] Arlotta so I could hold him, and stop him from hitting me again." Pl.'s Dec. (ECF No. 197-1 at 2). Plaintiff claims that after the scuffle, other COs came onto the pod and Plaintiff was handcuffed.

According to CO Arlotta's version of events, Plaintiff was called over to his cell and began grabbing clothes off of the floor and refused several orders to put the clothing back and to stand against the wall. CO Arlotta then attempted to handcuff Plaintiff but Plaintiff refused to be compliant and CO Arlotta radioed for another CO to come and then Plaintiff turned on him in an aggressive manner and began throwing strikes which resulted in CO Arlotta throwing strikes back until assistance arrived.

In connection with this altercation, Plaintiff was charged and convicted of aggravated assault by a prisoner, 18 Pa. C.S. §2703(A), aggravated assault – bodily injury, 18 Pa.C.S. § 2702 (A)(2), aggravated assault – bodily injury, 18 Pa. C.S. § 2702(A)(3) and simple assault, 18 Pa. C.S. § 2701(A)(1), and was sentenced to a term of imprisonment. Plaintiff denies assaulting CO Arlotta and claims that from the altercation he suffered a fractured thumb, broken jaw that caused temporomandibular joint dysfunction, pain in his ear and an injured right knee. Plaintiff was seen by ACJ medical following the altercation on December 19, 2013 and the medical records indicate that Plaintiff's only injury during the altercation was a scratch on his cheek. Plaintiff denies these were his only injuries.

b. Disciplinary Housing Unit Hearing

Plaintiff was moved to the Disciplinary Housing Unit ("DHU") in January 2014. On January 28, 2014, Warden Harper and Deputy Warden Emerick conducted a hearing to determine whether Plaintiff should continue to be held in DHU. The decision was made that Plaintiff would

be held in administrative custody in the DHU for the time he would spend in ACJ. Plaintiff alleges that this hearing was improper because he was not permitted to present his version of events, he was not given any paperwork or written reason why he was placed in administrative custody

c. Meals

Plaintiff alleges that he received bagged meals when he was in the MHU from December 20, 2013 to January 28, 2014 and received loaf meals when he was in DHU from January 28, 2014 to March 27, 2014 and a result lost 90lbs. Inmates are placed on loaf meals when they throw food. Plaintiff alleges that he was placed on loaf meals after it was alleged that he threw juice on a CO, but denies he did so. Plaintiff alleges that the bagged meals consisted of two sandwiches each meal which were made up of one slice of lunchmeat, one slice of cheese and two slices of bread. Plaintiff alleges that the loaf meals consisted of all of the food on the tray mashed together into the form of a loaf, and argues that he was never found guilty of any violation of throwing food off of his tray, therefore he should not have been placed on loaf meals. Corrections Defendant dispute that Plaintiff lost 90lbs and argue that Plaintiff was provided with adequate nutrition. Specifically, while the Corrections Defendants allege that Plaintiff remained essentially the same weight during the time he was in ACJ and claim that Plaintiff weighed 280lbs on May 20, 2013 and 250lbs on August 23, 2013, Correction Defendants point to no record evidence to support this allegation. The only evidence of Plaintiff's weight that Defendants provide is from 2016 and 2017 and indicates that he was between 281 and 289lbs. There is no evidence of record showing Plaintiff's weight during the time in question – December 2013 to March 2014.

d. Pepper Spray and Refusal of Shower

On August 19, 2014, Plaintiff was pepper sprayed by Sgt. Rubble. Plaintiff alleges that he was returning from court to ACJ and found Sgt. Rubble and an unnamed CO moving his things

from one cell to another cell. At this point, Plaintiff was handcuffed and tethered and returning to his cell accompanied by another unnamed CO. Plaintiff asked to see a captain which was denied. Sgt. Rubble then told the CO holding the tether to take Plaintiff into the yard cage pod, which is an individual cage in the yard for recreation. Plaintiff was not handcuffed when he was in the cage, but was locked in the cage. Plaintiff claims that Sgt. Rubble then came to the cage and Plaintiff backed away from the cage door and Sgt. Rubble sprayed Plaintiff through the handcuff slot, making it hard for Plaintiff to breath and making his skin burn. Sgt. Rubble alleges that Plaintiff refused to return to his cell when ordered and backed away from him and Sgt. Rubble then sprayed him. Plaintiff alleges that he was sprayed without "probable cause" and the pepper spray caused him scabs. Plaintiff also alleges that after being pepper sprayed, he asked CO Butler for a shower which CO Butler denied. Corrections Defendants admit that pepper spray was used on Plaintiff, but argue that even if he was denied a shower, he was seen by medical personnel that same day who noted that Plaintiff suffered no physical injury associated with being sprayed and no medical records show that Plaintiff asked for a shower.

e.  Condition of Cell

Plaintiff alleges that while he was in the MHU, that he was not allowed to have paper, plastic materials, a mattress, pillow, sheets, soap, toothpaste or toothbrush, cleaning supplies or towel or washcloth in his cell. Plaintiff alleges that he was placed in an unsanitary cell in the MHU where feces was caked around the toilet, there was urine on the floor, the metal bunk was rusted, and CO Brojovich did not allow Plaintiff to clean it. Plaintiff also alleges that he was placed in a cold cell while in the DHU, because he was placed in the corner cell and that cell was exposed to outside walls, it was very cold and he was not permitted extra blankets, and was only given one blanket and one sheet. He further claims that his cell was unsanitary and contained black mold

that he was not permitted to clean and there was very little ventilation in the cell so there was no heat coming in the cell. Corrections Defendants generally deny Plaintiff's assertion.

> f.  Denial of Shower

Plaintiff alleges that CO Brojovich, who controlled the showers, did not permit him to shower during his stay in the MHU from December 19, 2013 to January 28, 2014. He further claims that he was only permitted one shower while he was in the MHU by a CO that took over CO Brojovich's shift while he was on vacation. As previously mentioned, Plaintiff also alleges that CO Butler denied a shower to Plaintiff after being pepper sprayed on August 19, 2014. Plaintiff further claims that when being returned to DHU, he was denied a shower from CO Zoller from January 28, 2014 to February 27, 2014. Plaintiff claims that CO Zoller told him that he was being denied showers because he assaulted a CO. Plaintiff alleges that he developed "crotch sores" from a lack of a shower. Plaintiff submitted grievances complaining of the CO's refusal to allow him to shower for seven weeks, which were not responded to.

> g.  Cell Extraction

Plaintiff alleges that on August 31, 2014, Sgt. Raible and the CERT team used excessive force extracting Plaintiff from his cell. Plaintiff alleges that he asked an unnamed CO for soap which he denied. He told the CO that if he did not receive soap, he would claim to be suicidal. After, Plaintiff saw Sgt. Raible come onto the pod with pepper spray and two Cos. Plaintiff then ran to the back of his cell and grabbed his mattress and blocked the door because he wanted to block the spray. Plaintiff then told Sgt. Raible that he just wanted soap and to get the camcorder. Sgt. Raible left the pod and came back with the CERT team. Plaintiff was then handcuffed through the door slot, and after being cuffed, he sat down with his back against the cell door. When the CERT team opened the door, Plaintiff fell backwards and was pulled out of the cell and strapped

into a restraining chair. After that, Plaintiff was restrained onto the metal bunk and covered with a suicide blanket for sixteen hours. Plaintiff alleges that he suffered a broken left wrist and a sprained or fractured ankle from this extraction. There is no evidence of record that Plaintiff suffered these injuries with the exception of his own declaration. Plaintiff received an x-ray of his left wrist in June 2015 which indicated "No fracture, dislocation or other pathology is demonstrated" and that Plaintiff had a "[n]ormal left wrist." (ECF No. 207-1 at 4).

## III.    STANDARD OF REVIEW

The standard for assessing a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is well-settled. A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 250.

On a motion for summary judgment, the facts and the inferences to be drawn therefrom should be viewed in the light most favorable to the non-moving party. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Hudson v. Proctor & Gamble Paper Prod. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009) (citations omitted). It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. *See Anderson*, 477 U.S. at 255; *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004); *Boyle v. County of*

*Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S at 247-48. An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with respect to that issue. *Id.* "Where the record taken as a whole could not lead a reasonable trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'." *Matsushita*, 475 U.S. at 587; *Huston*, 568 F.3d at 104.

This standard is somewhat relaxed with respect to *pro se* litigants. Where a party is representing himself *pro se*, the complaint is to be construed liberally. A *pro se* plaintiff may not, however, rely solely on his complaint to defeat a summary judgment motion. *See, e.g., Anderson*, 477 U.S. at 256 ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). Allegations made without any evidentiary support may be disregarded. *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000). In order to survive a motion for summary judgment on a § 1983 claim, a plaintiff must adduce evidence that the defendants acted under color of state law, a fact not in dispute *sub judice*, and that the plaintiff was deprived of a federal constitutional right.

## IV. DISCUSSION

### a. Injunctive and Declaratory Relief

At the outset, Plaintiff seeks declaratory and injunctive relief. However, it is clear from the record that Plaintiff has not been incarcerated at ACJ since at least October 15, 2015 when he was transferred to Northeast Ohio Correctional Center ("NEOCC"). *See* Change of Address (ECF No. 48). A pretrial detainee's transfer to another institution moots a claim for injunctive and declaratory relief because the inmate is no longer subject to the conditions he alleges are

unconstitutional. *Abdul-Akbar v. Watson*, 4 F.3d 195, 206-07 (3d Cir. 1993); *see also Weaver v. Wilcox*, 650 F.2d 22, 27 (3d Cir. 1981) ("[A] prisoner lacks standing to seek injunctive relief if he is no longer subject to the alleged conditions he attempts to challenge."). Plaintiff has been out of ACJ custody since at least 2015, has not returned to ACJ and is currently incarcerated at SCI Forest. While this transfer moots his claims for declaratory and injunctive relief, it does not moot his claims for damages. *See United States ex rel. Jones v. Rundle*, 453 F.2d 147, 150 (3d Cir. 1971). Therefore, Plaintiff does not have standing to seek injunctive or declaratory relief here and Defendants are entitled to summary judgment on Plaintiff's claims for injunctive and declaratory relief.

   b.  42 U.S.C. § 1983

   To establish a *prima facie* case under § 1983, Plaintiff must demonstrate that a person acting under color of law deprived him of a federal right. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). He must also show that the person acting under color of law "intentionally" violated his constitutional rights or acted "deliberately indifferent" in violation of those rights. *See, e.g., County of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998); *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) (citing *Hill v. California*, 401 U.S. 797, 802–05 (1971)); *see also Berg v. County of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000).

   A plaintiff alleging a constitutional violation "must portray specific conduct by [ ] officials which violates some constitutional right." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). By doing so, a plaintiff must demonstrate a defendant's "personal involvement" in the alleged constitutional violation by adequately alleging either (1) the defendant's personal involvement in the alleged violation; or (2) his actual knowledge and acquiescence in the wrongful conduct. *Id.* (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d

Cir. 1988)). "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Id.* (citations omitted).

Moreover, "[i]n order to sustain a § 1983 claim against an individual acting under the color of state law, a plaintiff must demonstrate that the defendant was personally involved in the alleged violations of his or her federal rights." *Andrews v. Kenney*, No. 16-1872, 2017 WL 2591931, at *2 (E.D. Pa. June 14, 2017) (citing *Rode*, 845 F.2d at 1207).

    c.  <u>Excessive Force</u>

Plaintiff claims four instances of excessive force: (1) the altercation with CO Arlotta on December 19, 2013; (2) pepper spray by Sgt. Rubble on August 19, 2014; (3) CO Butler's refusal to allow Plaintiff to shower after he was pepper sprayed on August 19, 2014; and (4) the cell extraction on August 30, 2014 by Sgt. Raible and the CERT team. Each will be addressed separately.

A pretrial detainee's excessive force claim is governed by the Due Process Clause of the Fourteenth Amendment, which "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (citations omitted). Under the Due Process Clause, pretrial detainees must prove that law enforcement had an express intent to punish the detainee and must not have had an "alternative purpose" for the force or restriction or that the force or restriction "appears excessive in relation to the alternative purpose assigned[.]" *Bell v. Wolfish*, 441 U.S. 520, 538 (1979) (internal quotations and citations omitted).

In considering the reasonableness of the force used against a pretrial detainee, considerations such as "the relationship between the need for the use of force and the amount of

force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting" bear weight. *Kingsley,* 135 S. Ct. at 2473 (applying an objective standard for the use of force).

With this standard in mind, a prison's internal security is left to the discretion of prison administrators. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). Prison administrators should be afforded "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain insitutitional security." *Id*. at 321-22 (citations omitted). Decisions made by prison officials facing disturbances or emergencies affecting prison security should not be second-guessed by courts. *Id*. "The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Id*. at 319.

### i. *Altercation with CO Arlotta*

Plaintiff alleges that CO Arlotta used excessive force during the altercation that took place on December 19, 2013. CO Arlotta argues that he is entitled to summary judgment because (1) there is no injury established by competent medical evidence and (2) Plaintiff was convicted of assaulting CO Arlotta in connection with this altercation, and Plaintiff is precluded from arguing that he did not assault CO Artlotta.

CO Arlotta's first argument that Plaintiff has not established a sufficient injury for an excessive force claim is rejected. The extent of a pretrial detainee's injury in a Fourteenth Amendment excessive force claim is simply one factor to consider. CO Artlotta has not offered

any evidence explaining how the force used was rationally related to a legitimate government objective by explaining the need for the force used and the amount of force used, any effort made to temper or limit the amount or force, the severity of the security problem at issue, the threat reasonably perceived by the officer and whether the plaintiff was actively resisting. CO Arlotta, as the movant, bears the burden of showing that there is no material fact and he is entitled to judgment as a matter of law. He has not done so here. Just as in an Eighth Amendment excessive force claim, a significant injury is not a "threshold requirement for stating an excessive force claim[,]" it should neither be a threshold requirement for stating the same claim for a pretrial detainee under the greater protection afforded by the Fourteenth Amendment. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (applying the Eighth Amendment). The *de minimus* nature of Plaintiff's injuries may cast doubt on his version of the altercation, but that is an issue of fact to be resolved by the fact finder when considering the totality of the evidence. *Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002) (applying the Eighth Amendment).

Turning to CO Arlotta's next argument that Plaintiff is precluded from arguing that he did not assault CO Arlotta because Plaintiff was convicted of assaulting him and therefore is entitled to summary judgment on Plaintiff's excessive force claim, this argument is likewise rejected. Primarily, CO Arlotta fails to indicate under which legal premise preclusion is appropriate.[2] Assuming the CO Arlotta is arguing collateral estoppel or issue preclusion, he fails to offer any evidence that the issue of CO Arlotta's excessive force was previously argued in the criminal case and further fails to explain how the criminal proceeding's conviction precludes Plaintiff from

---

[2] While the court must afford leniency to *pro se* parties when construing their legal arguments, the same is not required for parties represented by counsel.

litigating an excessive force issue here.[3] See *James v. Heritage Valley Fed. Credit Union*, 197 Fed. Appx. 102, 106 (3d Cir. 2006) (unpublished) (discussing collateral estoppel in the context of the Fourth Amendment).

CO Arlotta does not argue that he applied force in good-faith to maintain or restore discipline and the court will not make that argument for him.[4] Accordingly, because a severe injury is not a threshold requirement for an excessive force claim under the Fourteenth Amendment and because CO Arlotta does not provide any evidence that any preclusion principles apply, his motion for summary judgment is denied.

### ii. *Pepper Spray*

Plaintiff alleges that on August 19, 2014, after Plaintiff was told that he that he had to move his cell, Sgt. Rubble emptied a can of pepper spray on him. Specifically, Plaintiff alleges that on that date, he returned from court and found Sgt. Rubble moving things in his cell to another cell. Plaintiff was handcuffed and tethered at this point. Plaintiff alleges that he asked Sgt. Rubble to speak to another officer because he claimed he should not have to move cells. Sgt. Rubble responded that he did not care that Plaintiff was being moved cells and Sgt. Rubble instructed the CO holding the tether to take Plaintiff to an individual yard cage on the pod, which was done. Sgt. Rubble then went to the yard where Plaintiff had been unhandcuffed but locked in the cage. Sgt. Rubble then began shaking a can of pepper spray, and Plaintiff backed away from the door and Sgt. Rubble stuck his hand in the handcuff slot of the cage and sprayed Plaintiff with pepper spray

---

[3]     CO Arlotta likewise does not argue any application of *Heck v. Humphrey*, 512 U.S. 477 (1994), and no decision to that point will be made.

[4]     From Plaintiff's own submissions, he disregarded CO Arlotta's orders to stay put and further that he engaged in the altercation. Depending on the evidence presented at trial, CO Arlotta may move for judgment as a matter of law at that time.

which Plaintiff claims made it hard for him to breath, and his skin burn. Sgt. Rubble claims that he told Plaintiff to "return to his cell," but Plaintiff did not comply.[5] (ECF No. 188 at 15).

Sgt. Rubble argues that he is entitled to summary judgment because "[m]edical records do not report any complaint about being sprayed on August 19, 2014. . . . [and] there is no complaint of any injury and there is no medical evidence of any physical injury related to being sprayed." (ECF No. 188 at 15).

Sgt. Rubble's argument fails, as previously stated, a "significant injury" is not a threshold requirement for stating an excessive force claim under the Fourteenth Amendment. Plaintiff alleges that he could not breath and the spray burned his skin. Further, Sgt. Rubble does not provide any explanation regarding whether pepper spraying Plaintiff was a good-faith effort to maintain or restore discipline or how the pepper spray was reasonably related to a legitimate government objective. Sgt. Rubble states that Plaintiff failed to follow orders to return to his cell, however, Plaintiff states that he was pepper sprayed without warning, while locked by himself in an individual cage. Plaintiff and Sgt. Rubble's credibility concerning their version of the events are questions for the fact finder. *See Drumgo v. Brown*, 525 Fed. Appx. 125, 128 (3d Cir. 2013) (unpublished). Further, the fact that Plaintiff did not complain of being pepper sprayed when he was examined by medical personnel is also a piece of evidence for the fact finder's consideration. Accordingly, Sgt. Rubble's motion for summary judgment on this point is denied.

### iii.  Refusal of shower after use of pepper spray

It is undisputed that Plaintiff was not permitted to shower after being pepper sprayed. Plaintiff claims that he specifically asked CO Butler for a shower, which was denied. CO Butler

---

[5]     Sgt. Rubble does not provide any citation in the record that supports this assertion. *See* Fed. R. Civ. P. 56(c)(1); (e).

argues that he is entitled to summary judgment because a one-time refusal to allow Plaintiff to take a shower "does not establish a subjective intention to punish the Plaintiff[,]" and "there is no indication in the medical record that a shower was necessary to protect Plaintiff's health, that he was complaining of symptoms associated with being [pepper sprayed] or that he requested a shower." (ECF No. 188 at 15).

Again, Plaintiff need not show a serious injury to state an excessive force claim, therefore, that no medical record indicates that Plaintiff complained of symptoms associated with being pepper sprayed or that he requested a shower from medical personnel is a credibility determination for the fact finder. As for CO Butler's argument that a one-time refusal to allow Plaintiff to take a shower does not establish a "subjective intention" to punish the Plaintiff, there is no "subjective" standard for a Fourteenth Amendment excessive force claim. Rather, the standard in determining whether force used on a pretrial detainee was excessive is "objective reasonableness" and the court will consider this "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vison of hindsight." *Kingsley*, 135 S. Ct. at 2473. A reasonable fact-finder could find that CO Butler's refusal to allow Plaintiff to shower after being pepper sprayed after Plaintiff told CO Butler his skin was burning was done deliberately with an intent to punish Plaintiff and did not serve to maintain or restore discipline, or any other legitimate nonpunitive governmental purpose. *Id*. Accordingly, CO Butler has not met his burden and his motion for summary judgment is denied.

*iv. Cell Extraction*

On August 30, 2014, Plaintiff alleges that he asked for soap and he did not receive any. He informed the CO that he did not receive any soap and if he did not he would claim to be suicidal. Some time later that day, Plaintiff claims that Sgt. Raible came to Plaintiff's cell with pepper spray

and Plaintiff ran to the back of his cell to grab his mattress to block the door. Plaintiff claims the

he told Sgt. Raible all he wanted was soap and told Sgt. Raible to get the CERT team. Sgt. Raible

then came back with the CERT team and handcuffed Plaintiff. Plaintiff then put his back against

his cell door and when the CERT team opened the cell door, he fell and was dragged out of the

cell and placed in a restraining chair. After some time, Plaintiff alleges that CERT took him out

of the restraining char and strapped him on a bunk. Plaintiff claims his wrist was broken when he

was strapped to the bunk, although there is no competent medical evidence supporting that claim.

Defendants dispute this occurred, but do not provide the court with an alternative narrative.

Again, Sgt. Raible and the CERT Team argues that because Plaintiff has not suffered any

injury supported by the record, they are entitled to summary judgment. This argument fails for the

same reasons set forth above, and because these Defendants do not argue that the force used was

reasonably related to a legitimate institutional objective.

Further, the CERT Team argues that it is not a "person" for section 1983 purposes and

should be dismissed from the case. As previously mentioned in this court's opinion on the motion

to dismiss, while the CERT Team is not a person under section 1983, the court treated this as if

Plaintiff listed several individual John Does as defendants. The same is true at this juncture.

Plaintiff shall substitute these John Does with identifiable individuals consistent with the order

that follows or those individuals will be dismissed with prejudice from this case.

     d.  <u>Conditions of Confinement</u>

Plaintiff claims four separate instances in which support a Fourteenth Amendment

conditions of confinement claim: (1) CO Brojovich's refusal to allow Plaintiff to shower while in

the MHU from December 19, 2013 to January 28, 2014; (2) CO Zoller's refusal to allow Plaintiff

to shower while in the DHU from January 28, 2014 to February 27, 2014; (3) Officer Brojovich

placing Plaintiff on bag meals while in the MHU; (4) that cells he was placed in were cold and unsanitary. Each will be addressed separately.

The Due Process Clause of the Fourteenth Amendment protects pretrial detainees against "punishment[,]" *Hubbard v. Taylor*, 399 F.3d 150 (3d Cir. 2005) (citing *Bell*, 441 U.S. 520 (1979)), and provides at least at much protection as the Eighth Amendment cruel and unusual punishment standard used to analyze conditions of confinement for convicted persons. *Bell*, 441 U.S. at 545. Thus, because the Eighth Amendment creates a floor for the protections afforded to pretrial detainees, if the condition violates the Eighth Amendment, it also violates a pretrial detainee's Fourteenth Amendment due process rights. The Eighth Amendment imposes a duty on prison officials to provide "humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In *Wilson v. Seiter*, 501 U.S. 294 (1991), the United States Supreme Court set forth the standard for alleged violations of the Eighth Amendment while addressing non-medical conditions of confinement. The Court held that the prisoner must prove that prison officials acted with deliberate indifference that deprived him of " 'the minimal civilized measure of life's necessities.' " *Id.* at 298–99 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

In the context of a Fourteenth Amendment conditions of confinement claim, a court must consider whether the condition amounts "to punishment prior to adjudication of guilt in accordance with law." *Hubbard*, 399 F.3d at 158. "Not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense[.]" *Bell*, 441 U.S. at 537. A constitutional violation exists if the conditions of confinement are not reasonably related to a legitimate, non-punitive governmental objective. *Bell*, 441 U.S. at 538-39. "In assessing whether the conditions are reasonably related to the assigned purposes, we inquire as to whether these conditions 'cause

[inmates] to endure [such] genuine privations and hardship over an extended period of time,' that the adverse conditions become excessive in relation to the purposes assigned for them." *Union Cty. Jail Inmates v. DiBuono*, 713 F.2d 984, 992 (3d Cir. 1983) (citing *Bell*, 441 U.S. at 542). A denial of the "minimal civilized measure of life's necessities," and conditions which are unsafe, unsanitary and inadequate that do not appear reasonably related to a legitimate, non-punitive governmental objective is sufficient to state an actionable constitutional deprivation. Rhodes, 452 U.S. at 347.

### 1. Denial of Shower and Hygiene

Plaintiff claims that while he was held in the MHU, he was permitted to shower once over a period of 39 days and that CO Brojovich refused to let him shower. It is not known from the record when Plaintiff received that shower. Further, Plaintiff claims that he was not permitted to shower when he was held in the DHU for a period of 30 days which ran consecutively from his refusal to shower in the MHU and that CO Zoller refused to let him shower. Plaintiff also alleges situations throughout his declaration that he was repeatedly denied soap, a toothbrush and toothpaste, or permitted a towel or washcloth in his cell.

CO Brojovich argues without citation to legal authority that he is entitled to qualified immunity because Plaintiff's right to shower is not settled law.

CO Zoller argues that his refusal to allow Plaintiff to shower did not deny Plaintiff of his basic human needs and therefore did not violate the Fourteenth Amendment.

Lastly, the Corrections Defendants argue that Plaintiff does not have a constitutional right to frequent or comfortable showers and his allegation that he was not permitted to shower – without alleging that he did not have access to soap and water – is not enough for a constitutional claim.

Defendants' arguments are rejected. The record is filled with instances that Plaintiff was

at times being denied soap, a washcloth, a toothbrush and toothpaste, and was denied showers for a period of at most 69 days. Considered in totality, these allegations could lead a reasonable factfinder to conclude that Plaintiff was denied the "minimal civilized measure of life's necessities." Not allowing a pretrial detainee to access soap or to shower for at most 69 days is not a "*de minimis* level of imposition with which the Constitution is not concerned." *Bell,* 441 U.S. at 539, n. 21. A reasonable jury could conclude that the denial to allow Plaintiff to shower caused Plaintiff to endure genuine privations and hardship over an extended period of time. *Id*. at 542.

Lastly, with respect to CO Brojovich's argument that he is entitled to qualified immunity, he has not fully briefed the issue and the court will not decide issues fleetingly referred to and not fully developed in briefing. Second, where there are "unresolved disputes of historical fact[s] relevant to the [qualified] immunity analysis[,]" it is premature for a court to grant summary judgment based on qualified immunity. *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002). CO Brojovich may raise his qualified immunity argument at the appropriate juncture at trial.

Accordingly, COs Brojovich and Zoller's motion for summary judgment is denied in this respect.

### 2. Bag and Loaf Meals

Plaintiff alleges that he was placed on bagged and loaf meals and that he lost 90lbs. Corrections Defendants seeks summary judgment on this claim and argues that Plaintiff's simply complains about the quality of the food and there is no evidence of his weight loss. Defendants attempt to show that Plaintiff's medical records indicate that he did not lose any weight, however, Defendants' assertions are either uncorroborated by record evidence, or are immaterial, as the medical records show Plaintiff's weight in 2016 and 2017, two years after the claims in this case. Nonetheless, Corrections Defendants' motion will be granted. It is apparent from the record that

Plaintiff simply found his bagged and loaf meals unappetizing and alleges no evidence that the meals were inadequate to maintain his health. *Ball v. Giroux*, 1:12-CV-10, 2012 WL 933271, at *6 (M.D. Pa. Jan. 12, 2012), *report and recommendation adopted*, 1:12-CV-10, 2012 WL 911880 (M.D. Pa. Mar. 15, 2012) ("the presentation of food in an unappetizing fashion, by itself, [does not] violate the Eighth Amendment."); *Jones v. Beard*, CIV.A. 10-5544, 2011 WL 3611470, at *8 (E.D. Pa. Aug. 16, 2011) (a food loaf that fully comports with the nutritional and caloric requirements of an inmate's diet does not constitutionally actionable). While Plaintiff alleges in his complaint that he lost 90 pounds, he does not support this allegation with any record evidence, including his own declaration. *See* Fed. R. Civ. P. 56(e). Therefore, according to the uncontroverted record, there has been no Fourteenth Amendment violation in connection to serving Plaintiff bagged or loaf meals and therefore Corrections Defendants are entitled to summary judgment in this respect.

### 3. Cold and Unsanitary Cell

Plaintiff alleges that while in the MHU, he was not allowed to have paper, plastic materials, a mattress, pillow, sheets, cleaning supplies and his cell in the MHU was unsanitary as it had feces caked around the toilet, urine on the floor, a rusted metal bunk, and CO Brojovich did not allow Plaintiff to clean it. Plaintiff further alleges that when he was in the DHU the cell he was placed in was cold and he was only given one blanket and one sheet. Plaintiff also alleges that his cell in the DHU contained black mold and CO Zoller did not allow him to clean it. These COs do not expressly move for summary judgment on Plaintiff's claims regarding his cold and unsanitary cell, therefore, this claim will also proceed.

### e. Inadequate Disciplinary Hearing and Procedural Due Process

Plaintiff alleges that Warden Harper and Deputy Warden Emerick failed to provide him

with adequate disciplinary hearing on January 28, 2014 before placing him on administrative custody, because he was not given a chance to present his statement or present evidence or witnesses.

Warden Harper and Deputy Warden Emerick argue that Plaintiff has failed to describe any facts supporting a constitutional violation and produced no evidence that either Defendant denied him a hearing, and that he did in fact have a hearing on his misconduct.

Defendants' argument misses the mark. Plaintiff alleges that he was not permitted to speak, present evidence or present witnesses at the disciplinary hearing before being placed on administrative custody. Defendants do not dispute this allegation. The Constitution provides prisoners "some procedural protections during an administrative hearing when facing the possible deprivation of a constitutionally cognizable liberty interest." *Tapp v. Proto*, 718 F. Supp. 2d 598, 624 (E.D. Pa. 2010), *aff'd*, 404 Fed. Appx. 563 (3d Cir. 2010) (unpublished), and *aff'd*, 404 Fed. Appx. 563 (3d Cir. 2010) (unpublished) (citations omitted). These protections include, for instance, adequate notice of the charges, an opportunity to call witnesses and present documentary evidence, and a statement of the grounds for disciplinary action. *See Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974); *Young v. Beard*, 227 Fed. Appx. 138, 141 (3d Cir. 2007) (unpublished). Thus, the fact that Plaintiff received a hearing is not material, it is whether he received procedural protections during that hearing. Accordingly, Warden Harper and Deputy Warden Emerick's motion for summary judgment is denied, as they have not shown that they are entitled to judgment as a matter of law.

## V.    CONCLUSION

Based on the foregoing, Corrections Defendants motion for summary judgment is granted in part and denied in part. The motion is granted as follows: (1) Plaintiff's claims for injunctive

and declaratory relief; and (2) Plaintiff's Fourteenth Amendment conditions of confinement claim for bagged or loaf meals.

The section 1983 claims that remain are as follows:

(1) A Fourteenth Amendment excessive force claim against CO Arlotta for the altercation;

(2) A Fourteenth Amendment excessive force claim against Sgt. Rubble for pepper spraying Plaintiff;

(3) A Fourteenth Amendment excessive force claim against CO Butler for denying Plaintiff a shower after being pepper sprayed;

(4) A Fourteenth Amendment excessive force claim against Sgt. Raible and the John Doe CERT Team members for the cell extraction;

(5) A Fourteenth Amendment conditions of confinement claim against CO Brojovich for denying Plaintiff a shower and upkeep hygiene while in the MHU;

(6) A Fourteenth Amendment conditions of confinement claim against CO Zoller for denying Plaintiff a shower and upkeep hygiene while in the DHU; and

(7) A Fourteenth Amendment conditions of confinement claim against CO Brojovich for Plaintiff's unsanitary cell in the MHU;

(8) A Fourteenth Amendment conditions of confinement claim against CO Zoller for Plaintiff's unsanitary cell in the DHU;

(9) A Fourteenth Amendment procedural due process claim against Warden Harper and Deputy Warden Emerick for an inadequate disciplinary hearing.

An appropriate Order follows.

By the Court:

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
Chief United States Magistrate Judge

cc:     ANTRON TALLEY
        GU 9829
        SCI Forest
        P.O. Box 945
        Marienville, PA 16239